# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia ex rel. Willard David Hutchinson, Petitioner Below, Petitioner**

**vs) No. 11-1639** (Cabell County 03-C-460)

**David Ballard, Warden, Respondent Below, Respondent**

**FILED**

April 16, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Willard David Hutchinson, by counsel, R. Stephen Jarrell, appeals the circuit court's order entered October 10, 2010, denying his petition for writ of habeas corpus. Warden Ballard[1] of Mount Olive Correctional Center, by counsel Laura Young, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was convicted of stabbing Linda Rigney to death and then stabbing her daughter, who tried to protect her mother. Ms. Rigney's son entered into a physical altercation with petitioner, punching petitioner's face. When petitioner was brought back to the scene, petitioner had blood on his hands and face. Serology reports of blood found in the house were part of the evidence used at trial. Petitioner was convicted of one count of murder and one count of unlawful wounding, in the Circuit Court of Cabell County on September 6, 2001, and later sentenced to life in prison without mercy. Petitioner's appeal for the conviction was refused by this Court on April 9, 2003.

On May 30, 2003, petitioner filed the instant petition for writ of habeas corpus but he never acted after receiving an extension of time to file an amended petition. In January of 2007, pursuant to *In re: Renewed Investigation of the State Police Crime Laboratory Serology Division*, 219 W. Va. 408, 633 S.E.2d 762 (2006) ("*Zain III*"), petitioner was granted another extension of time to file his amended petition. In June of 2008, the circuit court ordered the blood swabs be re-tested. Testing was delayed because some of the swabs were missing for several months but the

---

[1] Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, we have replaced the respondent party's name with Warden David Ballard. The initial respondent on appeal, Thomas L. McBride, is no longer the warden of Mount Olive Correctional Complex.

State eventually found them in a box when cleaning out an evidence room. Petitioner's amended petition raised two issues: that the serology reports admitted at trial were faulty, and that petitioner's trial counsel was ineffective for thirteen different reasons. Specifically, petitioner alleged that the serology reports showed different population frequencies and that the evidence may have been damaged or tampered with, since it was missing for several months. Additionally, petitioner alleged thirteen different issues relating to his trial counsel's performance. The circuit court denied his petition on both counts. The circuit court reasoned that petitioner's claims of ineffective assistance of counsel failed because any errors would not have prejudiced petitioner because the State had enough evidence to prove petitioner's guilt beyond a reasonable doubt. The circuit court further reasoned that petitioner's claim of differences between the testing done for trial and the testing done for his habeas hearings can be explained by degradation over time and smaller sample sizes, and that the evidence remained in the locked evidence room and was clearly marked, so the blood evidence has the same value it had at trial. Petitioner now appeals the denial of his habeas corpus petition below.

On appeal, petitioner argues the circuit court abused its discretion. Specifically, in regards to the serology tests, he argues that the differences between testing in 2001 and 2009 cannot be explained by sample size and degradation. The State responds that petitioner provided no substantiation for his assertions about the differences between the blood tests, that the misplaced evidence never left respondent's control, and that petitioner never asserted how the evidence issues would have impacted him, even if there was an error at trial. Second, in regards to his trial counsel's performance, petitioner argues several errors, and that the circuit court's application of the second prong of *Strickland v. Washington*, 466 U.S. 668 (1984), requiring that "but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" was erroneously transformed into a "sufficiency of the evidence challenge." The State responds that the circuit court did exactly what *Strickland* envisioned by examining the likely result of the case in the case where counsel acted differently and determined that the evidence supported petitioner's guilt beyond a reasonable doubt. Finally, petitioner re-asserts eighteen issues that were denied below, but offers no reasons for finding that the circuit court abused its discretion in so doing.

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

The Court has carefully considered the merits of each of petitioner's arguments as set forth in his petition for appeal. The circuit court did not abuse its discretion in denying petitioner's habeas corpus petition, because petitioner failed to show how he would be affected by a different result. Finding no error in the denial of habeas corpus relief, the Court incorporates and adopts the circuit court's detailed and well-reasoned order dated October 10, 2010, insofar as it

addresses the assignments of error appealed herein, and directs the Clerk to attach the same hereto.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**: April 16, 2013

**CONCURRED IN BY**:

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

3

# IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

11-1439

STATE OF WEST VIRGINIA EX REL.
WILLARD DAVID HUTCHINSON,
     Petitioner

v.

                                **CIVIL ACTION NO. 03-C-460**
                                **Judge Dan O'Hanlon**

THOMAS L. MCBRIDE, Warden
Mt. Olive Correctional Complex,
     Respondent

## AMENDED ORDER

This matter came before this Court on May 30, 2003, when the Petitioner filed his Petition for a Writ of Habeas Corpus Ad Subjiciendum and motion for appointment of counsel with the Cabell County Circuit Clerk's Office. On the 1st day of July, 2009, came the Petitioner's counsel, Stephen R. Jarrell, Esq., and the State of West Virginia, by counsel, Christopher Chiles, Esq. and Kellie Neal, Esq., for a hearing on the petition.

The Court has considered the Petition, the Respondent's responses, and the supporting memoranda of law, and has reviewed all pertinent legal authorities. As a result of these deliberations, and for the reasons stated below, the Court has concluded that the Petitioner failed to establish a basis for his Petition and that Petitioner's Petition for a Writ of Habeas Corpus Ad Subjiciendum should be denied.

## FACTS AND PROCEDURAL HISTORY

Petitioner seeks relief from his incarceration as a result of the sentence he received in the case of State of West Virginia v. Willard David Hutchinson, Indictment No. 01-F-91. Petitioner was indicted in 2001 and charged with one (1) count of first degree murder and one (1) count of

1

malicious wounding. The indictment alleged that the Petitioner had murdered Ms. Linda Rigney and stabbed her daughter, Jessica Ford.

The victim, Linda Rigney, was in the process of throwing the Petitioner out of her house because of his drinking and drug usage. The Petitioner was seen in Ms. Rigney's bedroom with her right before she was stabbed, and they were overheard by Ms. Rigney's son to be arguing. Upon hearing their mother scream, Jessica Ford, Ms. Rigney's daughter, and Chris Ford, her son, ran into her bedroom and Jessica Ford saw Ms. Rigney being pushed up against the wall by the Petitioner with blood pouring our of her mouth and with her shirt covered in blood. Ms. Rigney's children also saw the Petitioner holding in his hand a crystal-handled dagger which belonged to Ms. Rigney. Ms. Ford then pulled the Petitioner off of her mother, and when Ms. Ford returned to her mother, she was stabbed in the arm by the Petitioner.

After Ms. Ford was stabbed, Chris Ford engaged in a physical fight with the Petitioner, during which time Mr. Ford hit the Petitioner in the face a few times. Petitioner then fled the residence. The Petitioner was then observed by the police being brought back to the residence a short time later with blood on his hands and face and with a swollen right eye.

DNA testing was completed on various blood swabs taken from the crime scene, along with blood swabs taken from the blood on Petitioner's face and hands. The Petitioner's blood was found in swabs taken from a stair railing and a step inside Ms. Rigney's house, and Ms. Rigney's blood was found on swabs taken from the crystal-handled dagger, the Petitioner's chest, and Petitioner's left cheek, the Petitioner's right cheek, and the Petitioner's thumbnail.

Petitioner was subsequently tried by jury and convicted on September 6, 2001 of one count of murder and one count of unlawful wounding, a lesser included offense of malicious wounding. Pivotal in Petitioner's trial was DNA testing of certain blood swabs taken from the

2

crime scene and from the face and hands of the Petitioner. Sentencing was also held on September 6, 2001, with the jury returning a recommendation of no mercy as to the conviction on Count I for murder. On November 9, 2001, the Court sentenced Petitioner to a life sentence without mercy for Count I and a period of one (1) to five (5) years on Count II, said sentence to run consecutive to Count I. Petitioner has been in custody of the West Virginia Division of Corrections for his conviction since November, 1981

Petitioner appealed his conviction to the West Virginia Supreme Court of Appeals, which petition was refused by order entered on April 9, 2003. Supreme Court Case No. 021517. Petitioner then filed the instant petition for Writ of Habeas Corpus on May 30, 2003. Attorney Gregory K. Smith was appointed to represent the Petitioner by order entered on June 10, 2003. By amended order entered June 18, 2003, attorney Steven R. Jarrell was substituted as habeas counsel for the Petitioner.

On August 26, 2003, Petitioner filed a pro se motion to extend the time to file the amended petition, which motion was granted by order entered on August 28, 2003. The amended petition was due by November 1, 2003. No amended petition was filed by the due date and no action occurred in this matter until January 12, 2007, when the matter came on for a status conference before this Court. Additional time to file an amended petition was granted by order entered January 23, 2007, based upon the Supreme Court's decision in In The Matter of: Renewed Investigation of the State Police Crime Laboratory Serology Division filed June 16, 2006. It was also ordered that the blood evidence used in Petitioner's trial would be retested consistent with said case's ruling and direction. An omnibus hearing was scheduled for September 24, 2007. The omnibus hearing was continued first to November 7, 2007, then December 12, 2007.

Petitioner's amended petition, called "Petitioner's Closing Argument In Support of the Petitionaer's (sic) Habeas Corpus and Petitionaer's (sic) Losh V. McKenzie Checklist," was filed on November 1, 2007, alleging various constitutional defects in his arrest, trial and conviction. The omnibus hearing scheduled for December 12, 2007, was continued to January 7, 2008. The State was given until January 4, 2008, to respond to the amended petition. The State filed its response on January 4, 2008.

On January 4, 2008, the State also filed a motion to limit the defense's DNA testing. The motion came on for hearing on January 7, 2008, at which time the Court ruled that the Petitioner is only allowed to have independent DNA testing on those fifteen (15) items previously tested by the State prior to Petitioner's trial and admitted at Petitioner's trial, which were fourteen blood swabs and one carpet cutting. Petitioner and his counsel chose Human Identification Technologies, Inc. to complete the testing, and the Court so ordered this.

Thereafter, the Court ordered the release of this certain blood evidence. By order entered on June 18, 2008, Roy Johnson, court reporter, was ordered to transfer to the custody of David Castle, head of the identification Unit of the Huntington Police Department, exhibits #13, 14, and 28 from Petitioner's case. David Castle was then ordered to package said items as directed by Human Identification Technologies, Inc. and send those items to the lab.

On November 7, 2008, the Petitioner and Respondent appeared before the Court to report that, in spite of diligent efforts in this case, counsel for the Respondent was unable to locate the blood swabs which the Court previously ordered to be retested. The matter of the missing blood swabs was set for briefing and a hearing before this Court on February 20, 2009. The matter was continued to March 26, 2009. This hearing was continued again to April 23, 2009.

4

Prior to the hearing date, Roy Johnson, court reporter, was successful in locating the blood evidence admitted at Petitioner's trial. The blood evidence was then properly transferred to David Castle and shipped for testing as ordered by the Court. Due to the time necessary to complete the testing, the omnibus hearing was continued to May 13, 2009. Due to scheduling conflicts, the hearing was continued to June 15, 2009, and then to July 1, 2009.

This matter came on for hearing before this Court on July 1, 2009. At the hearing on July 1, 2009, counsel for the Petitioner introduced the testing report completed by Human Identification Technologies, Inc.

## ISSUES

Petitioner's amended petition alleged several issues. At the hearing, the issues were identified as:

A. The serology evidence tested and admitted at trial, pursuant to the Zain III decision; and

B. Ineffective assistance of counsel

The amended petition also listed the following issues which were briefed by the Petitioner, but not argued specifically at the hearing:

1. Petitioner argues the trial court violated the Petitioner's state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury because the trial court violated Rules 402 and 703 of the West Virginia Rules of Evidence by improperly allowing testimony of other crimes, wrongs or acts in violation of Rule 404(b) that irreparably prejudiced the Petitioner's jury verdict in the instant case at bar.

2. Petitioner argues that the trial court violated the Petitioner's state and federal constitutional rights under Article III, §14 of the West Virginia Constitution and the Fifth and Fourteenth Amendments of the United States Constitution to equal protection, due process of law, and a fair and impartial jury trial because the trial court erred in improperly excluding rebuttal evidence presented by the defendant to allegations of prior bad acts.

5

3.     This ground alleges ineffective assistance of counsel, which is addressed in issue (B) above.

4.     Petitioner contends his constitutional rights to equal protection, due process of law, a fair and impartial jury trial were violated because the court failed to give him access to competent evaluators to determine his state of mind made him not criminally responsible and not competent to stand trial or to testify which constitutes a deprivation of due process in violation of Article III, §10 of the West Virginia State Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

5.     Petitioner contends the trial court violated his Constitutional rights under the Fourteenth Amendment of the United States Constitution because the trial court did not act sua sponte and order a change of venue due to extensive, negative and prejudicial pretrial publicity , and the jury pool in this case was not impartial, and consequently a request for a change in venue should have been made by trial counsel.

6.     Petitioner contends the trial court committed numerous reversible and prejudicial errors thereby violating his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial due to the cumulative effects of errors committed by the trial court, prosecuting attorney, and trial counsel during his pre-trial, trial, sentencing, and other post-trial proceedings.

7.     Petitioner maintains the trial court violated his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial because the trial court judge denied defense counsel's motion for a directed verdict of acquittal for lack of sufficient evidence of the elements of first degree murder and unlawful wounding and were insufficient to exclude every reasonable hypothesis of innocence.

8.     Petitioner maintains the trial court violated his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial because the trial court judge failed to give the jury the proper instructions including, but not limited to, a Brant instruction during the jury charges in this case.

9.     Petitioner maintains that the trial court violated his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial because the prosecuting attorney committed prosecutorial misconduct.

10.     Petitioner contends that the decision by the West Virginia Supreme Court of Appeals to refuse review of the direct petition for appeal of April 9, 2003, in Supreme Court Case No. 021517 violated his due process rights as guaranteed by

6

the United States Constitution, the Eighth Amendment, and the Fourteenth Amendment, thereto pursuant to Evitts v. Lucey, 469 U.S. 378, 105 S.Ct. 830 (1985), and, in a word, is simply unfair for the State of West Virginia to condemn him to spend the rest of his life incarcerated without a merit consideration by the State's highest court.

11. This ground alleges violations related to the serology evidence tested and admitted at trial, pursuant to the Zain III decision, which is addressed in issue (A) above.

12. Petitioner moves to dismiss the two count indictment herein in that it alleges, under Count One, a violation of West Virginia Code § 61-8D-2(a), which statute, in its application via § 61-2-2, is in violation of the Constitution of the State of West Virginia and the Constitution of the United States as it permits an impermissible and unconstitutional shifting of the burden of proof to the Petitioner in order to receive mercy from the jury.

13. Petitioner contends there may be other reversible and prejudicial errors, and denials of both his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial, which may be evident upon review of all records, transcripts, statements, exhibits, and proceedings of pre-trial, trial, and post-trial rulings in this case.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

With regard to the issue of the blood evidence tested and admitted at Petitioner's trial, counsel for the Petitioner stated at the beginning of the hearing that the review of the serology evidence from Petitioner's trial was being conducted pursuant to In re Renewed Investigation of State Police Crime Laboratory, Serology Division, 219 W.Va. 408, 633 S.E.2d 762 (2006), even though Petitioner's original petition was filed before the Zain III decision. The only other issue raised at the hearing was ineffective assistance of counsel.

**1. The serology evidence tested and admitted at trial, pursuant to the Zain III decision**

Counsel for the Petitioner submitted the report of the serology testing of the trial evidence performed by Human Identification Technology, Inc. (hereinafter "HIT") as Exhibit 1. In

addition to the retesting of the blood samples, counsel for the Petitioner had HIT review the original testing performed by Dr. David Miller of the State Police Laboratory. Counsel for the Petitioner reported to the Court that HIT's report states there are differences between the two tests. According to HIT, these differences are largely attributed to the fact that Dr. Miller had fresh evidence and larger samples. Counsel for the Petitioner also reported to the Court that HIT states there is not a substantial difference that exists between the testing on the samples completed back in 2001 by the State Police Laboratory and the testing completed by HIT. The DNA evidence used to convict at trial was the blood of the victim and the Petitioner.

Based on the HIT report, counsel for the Petitioner reported to the Court that they were not going to call Dr. Miller or individuals from HIT.

Counsel for the respondent also reported to the Court that they had spoken to Mr. Miller, and Mr. Miller stated he could not conclude that there were any substantial differences between the results he obtained in 2001 and the testing by HIT. Mr. Miller's statement to counsel for the respondent was that the only differences he could really see had to do with the statistical population, and he attributed that to the fact that there was degradation of the swabs. HIT was unable to document as many alleles as the State Police Laboratory due to the degradation of the swabs. Once more alleles are achieved, the narrower the statistical population becomes. Since HIT was not able to achieve as many alleles as the prior testing, HIT's statistical population is larger, however, with regard to the evidentiary value of the testing, it remains the same as it was at trial.

Counsel for the Petitioner did call the Petitioner to the stand to testify. The initial questions surrounded Petitioner's "Losh" checklist. Petitioner testified that he understood that this was his omnibus habeas hearing and that issues not raised in this hearing are forever waived.

8

Petitioner also waived the attorney-client privilege in order to assert ineffective assistance of counsel.

A second issue with regard to the serology evidence centered on the inability of the State to locate the evidence for a period of time. Roy Johnson, Court Reporter, was called by Petitioner to testify regarding the evidence. As part of Mr. Johnson's job as court reporter, he was charged with keeping certain evidence submitted during trials. Mr. Johnson reported that the evidence was maintained by him in an evidence room inside his office at the time. Mr. Johnson reported that on at least two occasions, he had attempted to locate the serology evidence submitted as an exhibit in Petitioner's trial and was unable to locate the evidence.

Mr. Johnson then testified that when he retired and was moving out of the office, he located a container in the evidence room. Inside this container was a separate box of exhibits from Petitioner's trial. When this box was opened, the blood evidence from Petitioner's trial was inside the box. The evidence was not in the original box of exhibits from Petitioner's trial that was searched by Mr. Johnson, but in a separate, second box.

Mr. Johnson reported that the blood evidence that was retested by HIT was clearly marked as being an exhibit from Petitioner's trial. Mr. Johnson also stated that this evidence was in his care, custody and control from the time it was admitted in trial in September, 2001, until it was located again in March, 2009. Mr. Johnson reported that he was the only one with a key to the evidence room.

This Court hereby finds that the retesting of the blood evidence in this case results in this evidence having the same value that it had at trial. This issue is decided against the Petitioner.

9

## 2. Ineffective assistance of counsel

John Laishley, Esq., represented the Petitioner at trial. Co-counsel for the Petitioner was Ryan Turner, Esq. The main defense mounted by counsel for the Petitioner at trial was an insanity defense.

Counsel for the Petitioner called Mr. Laishley to testify. Initially, the inquiry of Mr. Laishley centered on whether he had requested and/or received a copy of the grand jury transcript. Mr. Laishley responded that he did not remember whether he got a grand jury transcript. Mr. Laishley also responded that his office had probably filed a standard omnibus discovery request. Mr. Laishley also testified during cross-examination that he felt he did not need the grand jury transcript to mount an insanity defense, and that he was more than satisfied with the extensive discovery provided by the State in the underlying criminal matter. Mr. Laishley also reported that he held discovery conferences with his co-counsel, Ryan Turner, and the investigator on the case, Greg Cook.

Mr. Laishley was specifically asked if he remembered giving a copy of the discovery to the Petitioner. Mr. Laishley reported that he did not remember providing a copy of the discovery to the Petitioner. Mr. Laishley reported that it was his policy not to have discovery "floating around the jail", so he distinctly remembered not providing the Petitioner with any copies of the gruesome crime scene photos. Mr. Laishley reported that the Petitioner was shown everything that his counsel was shown.

Mr. Laishley was also asked if he interviewed the children of the victim, Jessica and Chris Ford. Mr. Laishley reported that they were difficult to interview due to their status as children and their location being with relatives. Mr. Laishley also did not recall the testimony of Mr. and Ms. Ford being substantially different from their statements to the police. During cross-

10

examination, Mr. Laishley reported that he had attempted to contact these witnesses, however, the testimony of these witnesses was not the crux of their trial strategy, rather, it was Petitioner's mental state at the time of the attack.

Mr. Laishley was also asked about the testing of the blood evidence used at trial. Mr. Laishley did not recall Petitioner asking him to have it retested, nor did Mr. Laishley ask to have it retested.

Mr. Laishley was also asked about the use of an insanity defense at trial. Petitioner's competency was an issue at trial. Mr. Laishley reported that he selected a board-certified psychiatrist, Dr. Webb, who did a complete psychological and psychiatric work-up of the Petitioner. The Court held an extensive competency hearing before the trial. Mr. Laishley stated that Dr. Webb testified that the Petitioner was seriously mentally ill and suffered from multiple psychoses. Petitioner has a lengthy history of hospitalizations for mental illness. Despite being seriously mentally ill, however, Dr. Webb found that the Petitioner understood the difference between right and wrong and could assist in his defense. Dr. Webb determined that the Petitioner knew it was wrong to stab the victim and could appreciate the fact that such an act was a crime.

Counsel for the Petitioner then asked about whether Mr. Laishley had sought a second psychological evaluation, since the initial evaluation found the Petitioner competent. Mr. Laishley reported that he did not seek a second evaluation.

Last, counsel for the Petitioner asked Mr. Laishley whether he had requested a LaRock hearing for the Petitioner and whether he called any witnesses on the Petitioner's behalf. Mr. Laishley reported that a request for a LaRock hearing would have been standard for him, and that he did not recall whether he called any witnesses at that hearing.

The threshold question in analyzing effectiveness of counsel assistance is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on has having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). In Strickland, the United States Supreme Court held that the proper standard for attorney performance is that of reasonably effective assistance. Id.

Claims of ineffective assistance of counsel are to be governed by two-pronged test: (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. State ex rel. Hatcher v. McBride, 221 W.Va. 760, 656 S.E.2d 789 (2007).

In reviewing counsel's performance when considering a claim of ineffective assistance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions; thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. Waldron v. Scott, 222 W.Va. 122, 663 S.E.2d 576 (2008).

In undertaking an analysis of the effectiveness of trial counsel, the Court must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. In short, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. In determining whether

12

counsel's conduct falls within the broad range of professionally acceptable conduct, in a claim for ineffective assistance of counsel, courts are to avoid the use of hindsight to elevate a possible mistake into a deficiency of constitutional proportion; rather, under the rule of contemporary assessment, an attorney's actions must be examined according to what was known and reasonable at the time the attorney made his or her choices. State ex rel. Edgell v. Painter, 206 W.Va. 168, 522 S.E.2d 636 (1999).

Even if this Court could state that trial counsel's performance may have been deficient in some respects, this Court is unable to state that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been any different. This Court cannot, with confidence, state that counsel's acts or omissions were outside the *broad* range of professionally competent assistance while at the same time refrain from engaging in hindsight or second-guessing trial tactics.

The Strickland test is two-fold. Even if Petitioner can show certain errors of his counsel, Petitioner still has the burden to "affirmatively" show prejudice, which is to say, the existence of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668 (1984).

In other words, Petitioner has to prove that, had it not been for counsel's unprofessional errors, the outcome of the trial would have been in his favor, thus planting reasonable doubt in the minds of the jury. The inquiry then becomes whether there is a "reasonable probability" that the jury would have acquitted Petitioner but for the errors of his defense counsel. The answer to this question must be decided against the Petitioner according to the two-pronged test of Strickland. Even if defense counsel's errors were so serious as to satisfy the first prong of the Strickland test, these errors do not appear to this Court to rise to the level of such prejudice to the

13

Petitioner that he was denied a fair trial. The State appeared to have enough evidence to prove Petitioner's guilt in the stabbing beyond a reasonable doubt, and, in this Court's opinion, no reasonable probability existed for the jury to find in Petitioner's favor.

The issue of ineffective assistance of trial counsel is decided against the Petitioner in its entirety.

Petitioner then alleged several other issues which were not addressed at the hearing. In Perdue, the West Virginia Supreme Court of Appeals has stated that "A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing if the petition, exhibits, affidavits, or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657 (1973).

A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed. W.Va. Code § 53-4A-1(a); State ex rel. Farmer v. McBride, 224 W.Va. 469, 686 S.E.2d 609 (2009).

1. **Petitioner argues the trial court violated the Petitioner's state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury because the trial court violated Rules 402 and 703 of the West Virginia Rules of Evidence by improperly allowing testimony of other crimes, wrongs or acts in violation of Rule 404(b) that irreparably prejudiced the Petitioner's jury verdict in the instant case at bar.**

Petitioner asserts that the prosecuting attorney offered evidence of two prior alleged domestic batteries as evidence to prove the Petitioner's motive in this murder. One was an incident where Linda Rigney confronted the Petitioner about bringing alcohol into the house, and Petitioner is alleged to have struck Ms. Rigney. The second incident involved an allegation that the Petitioner had taken a child support check, and Petitioner is alleged to have pushed Jessica

14

Ford. Petitioner claims that the prosecution's attempt to show that this prior violence was the Petitioner's motive to kill the victim is flawed.

State v. Newcomb, 223 W.Va. 843, 679 S.E.2d 675 (2009)(evidence that five months prior to fatal stabbing, defendant had stabbed same victim in almost identical manner, was relevant, in trial for first-degree murder, to show motive, intent, and absence of mistake or accident).

When offering evidence of other crimes or prior bad acts, the prosecution is required to identify the specific purpose for which the evidence is being offered, and the jury must be instructed to limit its consideration to the evidence to only that purpose. Rules of Evid., Rule 404(b). It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses for introducing evidence of prior bad acts, the specific and precise purpose for which the evidence is offered must clearly be shown from the record, and that purpose alone must be told to the jury in the trial court's instruction. Id. The probative value of Petitioner's prior violent history was not substantially outweighed by the danger of unfair prejudice, in Petitioner's trial for first degree murder. The evidence was relevant to show motive, intent, and absence of mistake or accident, and the trial court gave appropriate instruction to the jury as to the jury's limited consideration of this evidence, both prior to introduction of the evidence and during the jury charge at the conclusion of the trial.

If a sufficient showing has been made at a hearing that the defendant committed other bad acts, the trial court must then determine the relevancy of the evidence and balancing the probative value of the evidence with its prejudicial effect. Rules of Evid., Rules 401-403, 404(b).

Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to

15

determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in State v. Dolin, 176 W. Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct were committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Upon application of these rules to the facts of this case, this Court finds that the evidence complained of was properly admitted into evidence by the trial court. The trial court held a pre-trial hearing on August 30, 2001, in which it discussed the admission of the evidence of prior bad acts. The trial court then entered an order on September 10, 2001, in which it granted the State's motion to permit the introduction of the evidence. At both the hearing and in its order, the trial court found that the evidence was relevant on the issue of motive, and that its probative value outweighed any prejudicial effect. The State was allowed to introduce such evidence for the limited purpose of completing the story in this case and on the issues of motive and intent.

The record also indicates that the trial court properly instructed the jury with regard to the evidence of prior bad acts. The trial court instructed the jury that the evidence of prior bad acts

16

was admitted only for the purpose of completing the story or of determining whether the State has established motive or intent, relative to the current alleged act. Finally, this Court finds that the trial court's ruling that the prior bad acts were relevant to show the Petitioner's motive for the crime of murder, and that the probative value of the evidence outweighed its prejudicial effect to be proper under the law of West Virginia. Accordingly, this Court finds that the trial court substantially complied with Rule 404(b) and West Virginia case law in admitting the evidence of prior bad acts.

This issue is decided against the Petitioner.

**2. Petitioner argues that the trial court violated the Petitioner's state and federal constitutional rights under Article III, §14 of the West Virginia Constitution and the Fifth and Fourteenth Amendments of the United States Constitution to equal protection, due process of law, and a fair and impartial jury trial because the trial court erred in improperly excluding rebuttal evidence presented by the defendant to allegations of prior bad acts.**

Petitioner contends that the trial court improperly excluded testimony of Petitioner's mother, Barbara Hutchinson. Trial counsel proffered that Ms. Hutchinson's testimony would rebut the testimony of Jessica Ford and Linda Rigney regarding the prior incidents of domestic battery introduced by the State. The State objected to the testimony of Ms. Hutchinson. The trial court ruled that any testimony Ms. Hutchinson planned to give regarding her conversations with Linda Rigney was barred by the Dead Man's Statute, W.Va. Code § 57-3-1, and was barred due to the unavailability of Ms. Rigney, due to her death. It was not error for the trial court to disallow hearsay testimony of certain people who were not available at trial. Petitioner had an opportunity to cross-examine the State's witnesses who provided the testimony of the prior incidents of domestic violence, thus, Petitioner's constitutional rights were not impinged by the exclusion of the testimony of Petitioner's mother, Barbara Hutchinson.

17

Any error in the admissibility of the testimony of certain defense witnesses does not implicate Petitioner's constitutional rights, and, thus, these alleged errors are not subject to habeas corpus review.

This issue is decided against the Petitioner.

3. This ground alleges ineffective assistance of counsel, which is addressed in issue (B) above.

4. Petitioner contends his constitutional rights to equal protection, due process of law, a fair and impartial jury trial were violated because the court failed to give him access to competent evaluators to determine his state of mind made him not criminally responsible and not competent to stand trial or to testify which constitutes a deprivation of due process in violation of Article III, §10 of the West Virginia State Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

The trial court ordered the Petitioner undergo psychological testing to determine if Petitioner was able to assist with his defense currently and if the Petitioner, on the date and times of the alleged crime(s), suffering from a mental disease or defect to the extent that he lacked substantial capacity either the appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. The trial court held a competency hearing and found Petitioner competent to stand trial, however, the Petitioner moved to present medical testimony on the issue of the Petitioner's competency to stand trial, which motion the Court granted.

Petitioner's main defense at trial was an insanity defense.

Petitioner contends that the Court and his counsel failed to give him adequate access to competent evaluators and failure to do so violated the federal guarantee of due process of law. Petitioner appears to object to the testimony of his own treating physician, Delano Webb, M.D. Petitioner claims he did not receive a competent psychological evaluation from Dr. Webb regarding Petitioner's competency at the time of the alleged crimes.

18

Under the West Virginia Rules of Evidence, expert testimony is admissible if a witness qualifies as an expert and the proffered testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" W.Va.R.Evd. 702. The decision to admit or reject expert evidence is committed to the sound discretion of a trial court, and the court's determinations are reviewable only for abuse of discretion.

This issue is decided against the Petitioner. The testimony of Petitioner's treating physician was properly considered by the Court, and Petitioner is not alleging any specific constitutional violation.

**5.     Petitioner contends the trial court violated his Constitutional rights under the Fourteenth Amendment of the United States Constitution because the trial court did not act sua sponte and order a change of venue due to extensive, negative and prejudicial pretrial publicity , and the jury pool in this case was not impartial, and consequently a request for a change in venue should have been made by trial counsel.**

Petitioner contends that the trial court should have ordered a change of venue on its own motion, without a motion for a change of venue by trial counsel. Petitioner also seems to contend that the jury pool was not impartial in his case due to prejudicial pre-trial publicity. Petitioner also seems to contend his trial counsel should have asked for a change of venue. Petitioner contends that, based upon the investigation of Greg Cook, there was a general hostile community sentiment towards the Petitioner.

A defendant may establish good cause for a change of venue by showing current hostile sentiment throughout the entire county. State v. Derr, 192 W.Va. 165, 451 S.E.2d 731 (1994). To warrant a change of venue in a criminal case, there must be a showing of good cause for the change, the burden of which rests on the defendant, the only person entitled to a change of venue. Id

Widespread publicity, of itself, does not require a change of venue, and neither does proof that prejudice exists against the defendant, unless it appears that the prejudice against him is so great that he cannot get a fair trial. State v. Young, 173 W.Va. 1, 311 S.E.2d 118 (1983). While a change of venue will be granted when it is shown that there is a present hostile sentiment against a defendant extending throughout the entire county in which he is brought to trial, mere existence of pretrial publicity concerning the alleged offense is insufficient to warrant a change of venue; rather, the publicity must be shown to have so pervaded the populace of the county as to preclude a fair trial. Id. The inquiry on a motion for a change of venue is not whether the community remembered or heard the facts of the case, but whether the jurors had such fixed opinions that they could not judge the guilt or innocence of the defendant impartially. Id. A review of the record in Petitioner's underlying criminal case reveals that the jury underwent meaningful and effective voir dire. The jurors replied negatively as to whether they were prejudiced by media coverage, thus, it was not a constitutional violation for the Court to rely on those jurors' statements and seat them as jurors.

There is no burden on the trial court to change the venue of a criminal trial. Trial counsel did not make a motion for a change of venue in the underlying criminal case. Whether trial counsel should have made such a motion because of pretrial publicity is a matter that should be covered under the issue of the possibility of ineffective assistance of counsel.

This issue is decided against the Petitioner.

6. Petitioner contends the trial court committed numerous reversible and prejudicial errors thereby violating his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial due to the cumulative effects of errors committed by the trial court, prosecuting attorney, and trial counsel during his pre-trial, trial, sentencing, and other post-trial proceedings.

20

Petitioner's statements with regard to his assertions that the court committed numerous reversible and prejudicial errors are blanket assertions and do not provide any adequate factual support from which the circuit court can make a ruling. These skeletal assertions do not preserve these claims for hearing. Hatcher v. McBride, 221 W.Va. 760, 656 S.E.2d 789 (2007). There is a presumption of regularity of court proceedings, and that the court performed its duty in every respect as required by law. Scott v. Boles, 150 W.Va. 453, 147 S.E.2d 486 (1966) Therefore, Petitioner must carry the burden of showing error in the judgment of which he complains, and these bare assertions of error do not carry that burden. Id.

Petitioner has not provided this Court with any examples, analysis, explanation, or legal citiaton of the errors alleged, therefore, these undeveloped issues are dismissed without a hearing on them. In the absence of any supporting arguments or authority, these assignments of error are deemed to have been waived.

7.     **Petitioner maintains the trial court violated his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial because the trial court judge denied defense counsel's motion for a directed verdict of acquittal for lack of sufficient evidence of the elements of first degree murder and unlawful wounding and were insufficient to exclude every reasonable hypothesis of innocence.**

Petitioner alleges that there was insufficient evidence to prove, beyond a reasonable doubt, that he was guilty of first degree murder and unlawful wounding. The Petitioner maintains that the evidence presented by the State in this case did not support the jury verdicts and the trial court's sentence, accordingly, there was insufficient evidence to convict the Petitioner, and the Court should have directed a verdict in favor of the Petitioner.

A petition for habeas corpus serves as a collateral attack upon a conviction, under the claim that the conviction was obtained in violation of the state or federal constitution. Edwards v. Leverette, 163 W.Va. 571, 258 S.E.2d 436 (1979). Therefore, while W. Va. Code Section 53-

21

4A-1 through 11, provides a broad and effective post-conviction review, the Supreme Court still maintains a distinction, so far as post-conviction remedy is concerned, between plain error in a trial and error of constitutional dimensions. Only the latter can be a proper subject of a habeas corpus proceeding. A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed. State ex rel. McMannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 805 (1979). Petitioner's blanket assertion that his constitutional rights are implicated does not necessarily make it so.

Any possible error by the trial court in denying Petitioner's motion for acquittal at the close of the state's case does not implicate Petitioner's constitutional rights, and thus, this alleged error is not subject to habeas corpus review. W.Va. Code § 53-4A-1(a); State ex rel. Farmer v. McBride, 224 W.Va. 469, 686 S.E.2d 609 (2009); State ex rel. Edgell v. Painter, 206 W.Va. 168, 522 S.E.2d 636 (1999). Even if this alleged error was supported by the record, it does not implicate Petitioner's constitutional rights in such a manner as to require review in a petition for habeas corpus, and, therefore, this issue is found against the Petitioner.

8. Petitioner maintains the trial court violated his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial because the trial court judge failed to give the jury the proper instructions including, but not limited to, a Brant instruction during the jury charges in this case.

Petitioner contends that the verdict of the jury is contrary to the law and the evidence due to the failure of the State to prove the three elements of intent, malice, and above all, premeditation. Petitioner contends that a Brant instruction should have been given. The Brant case held that where evidence introduced by the State did not demonstrate any ill will or source of antagonism between the defendant and the homicide victim or any predisposition toward aggressive behavior on the part of the defendant, and in fact demonstrated circumstances affirmatively showing an absence of malice on the part of the defendant, thus precluding

22

inference of malice from use of a deadly weapon, and where evidence indicated that defendant's shooting of the victim was the result of total incapacitation due to unusually high alcohol consumption, the giving of instructions by the court on first- and second-degree murder was error. State v. Brant, 162 W.Va. 762, 252 S.E.2d 901 (1979). Where a weapon is involved, it must affirmatively appear that the defendant had no predisposition to commit a crime or to engage in aggressive antisocial conduct which voluntary intoxication brought to the forefront. Id. The Supreme Court has held, however, that the law announced by the Court in Brant is such that courts should normally give this type instruction only when faced with facts similar to the facts in that decision. State v. Miller, 184 W.Va. 492, 401 S.E.2d 237 (1990). This Court does not find the same relationship between Petitioner and the victims as was the case in Brant. Petitioner has a prior violent history with the victims. The preferable instruction which should be given when the mitigating condition of intoxication is present, and the Brant circumstances are not present, is found in the instructions on intoxication given at Petitioner's trial.

The instruction given for the charge of malicious wounding was as follows:

Voluntary intoxication is generally never an excuse for a crime. However, where a certain state of mind or intent is an essential element of the crime, an accused is not guilty of malicious or unlawful wounding if, at the time of the commission of the alleged criminal act, he was so highly intoxicated that he was unable to form the essential intent or have the essential mental state.

In this case, the defendant is charged with malicious assault. One of the essential elements of malicious assault is the intent to main (sic), disfigure, disable or kill. The defendant contends at the time of the alleged offense, he was unable to intend to maim, disfigure, disable or kill, because he was so highly intoxicated.

The instruction given for the charge of murder was as follows:

Voluntary intoxication is generally never a defense to a crime, but where a defendant is charged with Murder, and the jury believes beyond a reasonable doubt that the defendant was so highly intoxicated to be capable of deliberating and premeditating, as those terms have been defined for you, in that instance

23

intoxication may reduce Murder in the First Degree to Murder in the Second degree..

Therefore, if you believe from the evidence that that (sic) the defendant killed Linda Rigney but was at that time so highly intoxicated as to be incapable of acting deliberately and premeditatedly then, in that event, you can find Willard Hutchinson guilty of no greater offense that Murder in the Second Degree.

Based on the presence of a previous violent relationship between the Petitioner and the victims, a Brant instruction was not proper in this case. The Court gave the proper instructions for the mitigating factor of intoxication.

This issue is decided against the Petitioner.

9. **Petitioner maintains that the trial court violated his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial because the prosecuting attorney committed prosecutorial misconduct.**

Petitioner alleges that the prosecutor committed misconduct by withholding exculpatory evidence in the form of photographs of the Petitioner, presented perjured testimony, made threats to defense witnesses, and committed an inflammatory disruption of the jury trial.

Petitioner argues that the photographs of the Petitioner taken by police investigators, are exculpatory in that they would show that Petitioner arrived after the victim was stabbed. Petitioner claims these photographs were never given to the Petitioner's defense counsel. Petitioner also argues that the State presented perjured testimony because a witness for the state, Ms. Jessica Ford, testified that she was in counseling to help with her depression, but then appeared on the Montel Williams show aired on June 24, 2009, and stated that she was not in counseling.

Petitioner further argues that two outbursts and breakdowns by Angela Ford during the testimony of two of the State's witnesses impermissibly prejudiced Petitioner's defense, and he

24

was denied a fair trial. Last, Petitioner argues that two of the State's witnesses attempted to intimidate one of the defense witnesses.

Petitioner's allegations do not implicate the prosecuting attorney in each instance. Defense counsel could have requested the photographs. If the State's witness, Ms. Jessica Ford, did admit to perjuring herself when she later told Montel Williams that she was not in counseling, there is no allegation that the prosecuting attorney knew of the possibly perjured testimony. A prosecutor is allowed to argue all reasonable inferences from the facts presented at trial. State ex rel. Edgell v. Painter, 206 W.Va. 168, 522 S.E.2d 636 (1999). This Court finds that these errors, even if supported by the record, would not implicate Petitioner's constitutional rights in such a manner as to be reviewable on habeas corpus or that they establish manifest injustice.

This issue is decided against the Petitioner.

10. Petitioner contends that the decision by the West Virginia Supreme Court of Appeals to refuse review of the direct petition for appeal of April 9, 2003, in Supreme Court Case No. 021517 violated his due process rights as guaranteed by the United States Constitution, the Eighth Amendment, and the Fourteenth Amendment, thereto pursuant to Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830 (1985), and, in a word, is simply unfair for the State of West Virginia to condemn him to spend the rest of his life incarcerated without a merit consideration by the State's highest court.

Petitioner contends it is patently unfair that the West Virginia Supreme Court of Appeals refused full appellate review of Petitioner's underlying criminal case. The West Virginia Supreme Court of Appeals has previously held that a defendant had no state or federal constitutional right to full appellate review of his conviction. Billotti v. Dodrill, 183 W.Va. 48, 394 S.E.2d 32 (1990). The present discretionary appellate review process system in West Virginia has been upheld by the Fourth Circuit Court of Appeals. Billotti v. Legursky, 975 F.2d 113 (4th Cir. 1992).

25

Therefore, this Court finds no merit in Petitioner's contention that it was unfair for the West Virginia Supreme Court to refuse a full appellate review of his criminal conviction. This issue is found against the Petitioner.

**11.** **This ground alleges violations related to the serology evidence tested and admitted at trial, pursuant to the Zain III decision, which is addressed in issue (A) above.**

**12.** **Petitioner moves to dismiss the two count indictment herein in that it alleges, under Count One, a violation of West Virginia Code § 61-8D-2(a), which statute, in its application via § 61-2-2, is in violation of the Constitution of the State of West Virginia and the Constitution of the United States as it permits an impermissible and unconstitutional shifting of the burden of proof to the Petitioner in order to receive mercy from the jury.**

The trial court ordered the bifurcation of Petitioner's trial and sentencing. Petitioner's sentence was handed down pursuant to W.Va. Code § 62-3-15. The constitutionality of W.Va. Code § 62-3-15 has been upheld by the West Virginia Supreme Court of Appeals in several decisions. *See*, State ex rel. Leach v. Hamilton, 280 S.E.2d 62 (W.Va.1980); Moore v. McKenzie, 160 W. Va. 511, 236 S.E.2d 342 (1977); and State ex rel. Rasnake v. Narick, 159 W. Va. 542, 227 S.E.2d 203 (1976). Indeed, the issue is so-well-settled that in State v. LaRock, the Court state that "[f]urther inquiry and evaluation of the statute's constitutionality hardly would be worth the effort, resources, and costs." 196 W.Va. 294, 313, 470 S.E.2d 613, 632 (1996). Moreover, the West Virginia Supreme Court of Appeals recently held that the provisions of W.Va. Code § 62-3-15 do not place a burden of proof on either the State or the defendant for the mercy phase of a first degree murder trial where that phase is bifurcated. State v. McLaughlin, 2010 WL 2346249, _____ S.E.2d _____ (W.Va. 2010). Petitioner's mercy phase was bifurcated from his trial, therefore, there was no impermissible shifting of the burden of proof to the Petitioer in order to receive mercy.

This issue is decided against the Petitioner.

26

13.    Petitioner contends there may be other reversible and prejudicial errors, and denials of both his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial, which may be evident upon review of all records, transcripts, statements, exhibits, and proceedings of pre-trial, trial, and post-trial rulings in this case.

Petitioner's mere recitation of enumerated grounds without detailed factual support does not justify issuance of a writ of habeas corpus and the holding of a hearing. Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657 (1973). A petition must specifically state in detail the underlying facts that support the claim; mere recitation of grounds without detailed factual support does not justify the issuance of a writ, the appointment of counsel, and the holding of a hearing. Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606 (1981).

Petitioner's statements with regard to the above issues are blanket assertions and do not provide any adequate factual support from which the circuit court could make a ruling. These skeletal assertions do not preserve these claims for hearing. Hatcher v. McBride, 221 W.Va. 760, 656 S.E.2d 789 (2007). There is a presumption of regularity of court proceedings, and that the court performed its duty in every respect as required by law. Scott v. Boles, 150 W.Va. 453, 147 S.E.2d 486 (1966) Therefore, Petitioner must carry the burden of showing error in the judgment of which he complains, and these bare assertions of error do not carry that burden. Id.

Petitioner has not provided this Court with any examples, analysis, explanation, or legal citiaton of the errors alleged, therefore, these undeveloped issues should be dismissed without a hearing on them. In the absence of any supporting arguments or authority, these assignments of error are deemed to have been waived.

## CONCLUSION

This Court finds no merit in any of Petitioner's issues. Whereupon, the Court, after considering the facts, is of the opinion to deny Petitioner's writ of habeas corpus.

27

It is, therefore, **ORDERED** that Petitioner's Writ of Habeas Corpus Ad Subjiciendum is hereby **DENIED.**

It is accordingly **ADJUDGED, ORDERED** and **DECREED**, that the Petitioner is entitled to no relief, and it is therefore Ordered that the Writ of Habeas Corpus Ad Subjiciendum heretofore issued is discharged and held for naught, and that the Petition herein be dismissed with prejudice from the docket of this Court.

The clerk is directed to send a copy of this order as follows:

Stephen R. Jarrell, Esq.
606 Central Avenue
Barboursville, WV 25504

The Honorable Chris Chiles
Cabell County Courthouse
750 5th Avenue
Huntington, WV 25701

Willard D. Hutchinson
Inmate #30786-1
Mt. Olive Correctional Center
1 Mountainside Way
Mt. Olive, WV 25185

Entered this ___ day of October, 2010.

_____
Judge Dan O'Hanlon
6th Judicial Circuit

**ENTERED** Circuit Court Civil Order Book
No._____ Page_____ this
STATE OF WEST VIRGINIA
COUNTY OF CABELL
I, ABELL CHANDLER, CLERK OF THE CIRCUIT
COURT FOR THE COUNTY AND STATE AFORESAID
DO HEREBY CERTIFY THAT THE FOREGOING IS
A TRUE COPY FROM THE RECORDS OF SAID COURT
ENTERED ON _____
GIVEN UNDER MY HAND AND SEAL OF SAID COURT
THIS_____

_____ CLERK
CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

28